Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-08-00384-CV

Mireya Garza Rodriguez de **ELIZONDO**,
Appellant

v.

Rodrigo **ELIZONDO**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-07740
Honorable Andy Mireles, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Phylis J. Speedlin, Justice

Delivered and Filed:    June 10, 2009

AFFIRMED

        Appellant Mireya Garza Rodriguez de Elizondo, a resident of Mexico, filed suit in Bexar

County, Texas, against her husband Rodrigo Elizondo, also a resident of Mexico. In her petition,

Mireya alleged claims against Rodrigo for breach of fiduciary duty, fraud and constructive fraud,

conversion, and unjust enrichment. In response, Rodrigo filed a special appearance, asserting the trial

court had no personal jurisdiction over him and requesting dismissal of Mireya's petition. Following

an evidentiary hearing, the trial court sustained Rodrigo's special appearance, and dismissed Mireya's petition for lack of personal jurisdiction. Because we agree the trial court lacked personal jurisdiction over Rodrigo, we affirm the judgment of the trial court.

## BACKGROUND

Mireya and Rodrigo were married in Monterrey, Mexico on July 16, 1975. Both Mireya and Rodrigo are lifelong residents and citizens of Mexico and have never lived in Texas. When the couple married, Mireya received an inheritance in excess of 1.75 million Mexican pesos. The couple invested Mireya's inheritance proceeds and other money belonging to Rodrigo into joint investment and other accounts in several banks located in Texas.

After almost three decades of marriage, the couple experienced marital problems and separated. Shortly before the separation, in May and June of 2005, Rodrigo withdrew over $200,000.00 from several of the couple's Texas bank accounts. In May of 2007, Mireya filed suit against Rodrigo in Bexar County, Texas, alleging Rodrigo's withdrawal of sums of money from the Texas bank accounts constituted breach of fiduciary duty, fraud and constructive fraud, conversion, and unjust enrichment. Mireya also sought injunctive relief to prevent Rodrigo from withdrawing additional funds from the Texas bank accounts. Divorce proceedings were also commenced in Mexico.

Rodrigo responded to the Texas suit by filing a special appearance in which he alleged there was no basis for the Texas court to exercise personal jurisdiction over him. Attached to Rodrigo's amended special appearance was an affidavit in which Rodrigo testified (1) he was a Mexican citizen and maintained his permanent residence in that country and was not a resident of Texas; (2) he had

not committed a tort or breached any contract in Texas; (3) he did not lease or own real property in Texas; (4) he did not have any employees in Texas; (5) the few bank accounts he maintained in Texas did not provide a sufficient basis upon which a Texas court could maintain personal jurisdiction over him; and (6) he did not otherwise maintain continuous and systematic contacts in Texas.

The trial court sustained Rodrigo's special appearance and dismissed Mireya's petition for lack of personal jurisdiction. Mireya then appealed the judgment of dismissal. Findings of fact were neither requested nor filed. On appeal, Mireya argues the trial court erred in dismissing the case for lack of personal jurisdiction because Rodrigo's acts of opening, maintaining, and closing bank accounts in Texas were continuous, systematic, and substantive acts sufficient to subject Rodrigo to the general jurisdiction of Texas.

## STANDARD OF REVIEW

On appeal, we review de novo the trial court's determination to grant or deny a special appearance. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Whether a court has personal jurisdiction over a defendant is a question of law. *Coleman,* 83 S.W.3d at 805-06. Nevertheless, to resolve the issue of jurisdiction, the trial court must frequently determine questions of fact. *Id*. at 806. When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d 795. Courts determine a special appearance based on the

pleadings, any stipulations made by and between the parties, affidavits and attachments filed by the parties, the results of discovery processes, and oral testimony. TEX. R. CIV. P. 120a(3).

## PERSONAL JURISDICTION

The Texas long-arm statute, which governs the exercise of jurisdiction over nonresident defendants, permits Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045 (Vernon 2008); *BMC Software*, 83 S.W.3d at 795. The statute provides a list of acts that may constitute doing business in Texas, including (1) contracting by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this State, (2) committing a tort in whole or in part in this state, or (3) recruiting Texas residents, directly or indirectly through an intermediary located in this state, for employment inside or outside this state. *Id*. § 17.042. The statute further provides that "other acts" by the nonresident may also constitute "doing business" in Texas. *Id*. The supreme court has held that the long-arm statute's broad language extends as far as the federal constitutional requirements of due process permit. *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795. A nonresident defendant that has purposefully availed himself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *BMC Software*, 83 S.W.3d at 795. A defendant, however, should not be subject to a foreign court's jurisdiction based

upon random, fortuitous, or attenuated contacts. *Id*. Because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system, the minimum contacts analysis is particularly important when the defendant is from a different country. *Id.*

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *Id.* at 795-96. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id*. at 796. General jurisdiction is established when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id*. General jurisdiction is premised on the notion of consent. *Coleman*, 83 S.W.3d at 808. In other words, by invoking the benefits and protections of the forum's laws, the defendant consents to being sued there. *Id*.

General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd.,v. English China Clays*, *P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). In evaluating the existence of general jurisdiction, courts look for proof of a pattern of continuing and systemic activity. *Coleman*, 83 S.W.3d at 809. All contacts made up to the time suit is filed are relevant to the general jurisdiction inquiry. *See id*. at 807-08. (analyzing general jurisdiction by examining contacts with Texas up until the commencement of the suit). What constitutes continuous and systematic contacts with the forum is decided on a case-by-case basis. *Id.* at 810.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *BMC Software*, 83 S.W.3d at 793. Upon filing a special appearance, the nonresident defendant assumes the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *Oryx Capital Int'l, Inc., v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 441 (Tex. App.—San Antonio 2005, no pet.). When the plaintiff does not plead any jurisdictional allegations, *i.e.*, that the defendant has committed any act in Texas, the defendant can satisfy his burden of negating all bases of personal jurisdiction by simply presenting evidence that he is a nonresident. *Oryx Capital*, 167 S.W.3d at 441; *see also Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) (holding specially-appearing individual defendants sustained their burden to negate all bases of jurisdiction by presenting evidence of their nonresidence when the plaintiff did not allege any act by them that would have reasonably foreseeable consequences in Texas).

### JURISDICTIONAL ALLEGATIONS

As a preliminary matter, Rodrigo argues Mireya failed to plead any basis for personal jurisdiction and, therefore, Rodrigo's proof of his nonresidence in and of itself was sufficient to negate all bases of personal jurisdiction. We disagree. In her petition, Mireya alleged, "[t]his court has jurisdiction over the parties because Defendant[] conduct[s] business in Bexar County, Texas." Because Mireya's petition contains an allegation of some act which could subject Rodrigo to the jurisdiction of a Texas court, we conclude this is not a case in which proof of nonresidence alone is sufficient to negate all bases of jurisdiction. *See Huynh v. Nguyen*, 180 S.W.3d 608, 619-20 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (stating plaintiff's minimal pleading requirement is

satisfied by an allegation that the nonresident defendants are doing business in Texas); *but see Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex. App.—Dallas 1993, writ dism'd) (holding when plaintiff did not allege specific jurisdictional facts and did not introduce evidence to support jurisdiction based on the commission of a tort in Texas, defendant negated personal jurisdiction by simply showing it was a nonresident).

## GENERAL JURISDICTION

On appeal, the only issue presented is whether Rodrigo's contacts with Texas, in particular his acts in opening, maintaining, and closing investment and other bank accounts, give rise to general jurisdiction. We, therefore, limit our review to the issue presented.

In her brief, Mireya argues Rodrigo has continuous and systemic contacts with Texas because "[d]uring the course of several years of investment, numerous bank accounts were opened with substantial amounts of money deposited into each bank account in San Antonio and Laredo[,] Texas." Additionally, Mireya argues that Rodrigo has continuous and systemic contacts with Texas because in May and June of 2005, Rodrigo traveled to several Texas cities "to empty and transfer funds to various accounts." Mireya further argues that Rodrigo has continuous and systemic contacts with Texas because in May and June of 2005, Rodrigo communicated by telephone and facsimile with Texas bank officers from his home in Mexico.

A number of Texas cases have considered the circumstances under which a nonresident defendant may be subjected to the general jurisdiction of Texas courts based on the use of a Texas bank account. *See, e.g.,El Puerto de Liverpool, S.A. v. Servi Mundo Llantero, S.A.*, 82 S.W.3d 622, 631 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.); *Transportes Aereos de Coahuila, S.A. v.*

*Falcon*, 5 S.W.3d 712, 720 (Tex. App.—San Antonio 1999, pet. denied), *disapproved on other grounds*, *BMC Software*, 83 S.W.3d at 794 n.1.; *Ramirez v. Lagunes*, 794 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1990, no writ). When making this determination, courts apply the standard general jurisdiction analysis. *El Puerto*, 82 S.W.3d at 631. Courts consider the quality and the nature of the defendant's contacts in using the accounts. *Id*. The purpose of the account, the number of account transactions, and the duration of the account are factors to be considered, but are not by themselves determinative of the issue of general jurisdiction. *See id.* at 631-32. To establish minimum contacts, the defendant's use of the account must show that the defendant conducted substantial activities in Texas and thereby purposefully availed himself of the privileges and benefits of conducting business in Texas. *Id*. at 632.

Here, because the trial court filed no findings of fact, we imply the factual findings necessary to support the trial court's judgment. The record before us, which includes pleadings, affidavits, discovery, and oral testimony, supports the following implied factual findings. Rodrigo was a co-owner of six accounts in three different banking institutions in Texas.[1] Most of the accounts were investment accounts; a few were checking accounts which were linked to the investment accounts. The accounts were personal in nature and were not related to any business owned by Rodrigo or Mireya. The accounts were funded entirely with monies derived from Mexico. Although some of the accounts existed over the course of several decades, nothing in the record shows the accounts were subject to frequent or regular use. In May and June of 2005, Rodrigo closed and transferred funds out

---

[1] Mireya alleged in her petition that Rodrigo had nine bank accounts in Texas, but in an affidavit attached to his amended special appearance Rodrigo specifically denied that three of these accounts ever existed.

of some of these accounts. Some of these transactions were made when Rodrigo traveled to Texas and visited the banks in person; others were made by way of telephone and facsimile communications while Rodrigo remained in Mexico.

In arguing in favor of the existence of general jurisdiction, Mireya relies heavily on *El Puerto*, a case upholding a trial court's finding that a nonresident corporate defendant purposefully established and maintained sufficient minimum contacts to establish general jurisdiction. 82 S.W.3d at 631-33. Nevertheless, *El Puerto* is distinguishable from the case before us. First, in *El Puerto* the court's finding of general jurisdiction was not based solely on the defendant's use of a Texas bank account, but also on the systematic and continuous contacts of the defendant's subsidiaries. *See id*. at 633 ("[W]e need not decide whether or not [the use of its bank account] alone would render El Puerto subject to general jurisdiction in Texas, rather we consider the totality of El Puerto's contacts with Texas."). Second, the nature and the quality of the account in *El Puerto* is unlike the accounts in the present case. In *El Puerto*, the bank account was initially opened as a business investment account, allowing only three checks per statement period. *Id*. at 632. Later, the defendant deliberately changed the bank account to allow for a greater number of transactions. *Id*. Thereafter, the nonresident corporate defendant averaged a significant number of transactions—170 transactions annually—on the bank account, and used the bank account for a variety of business purposes, including providing dollars for its operating needs, facilitating the exchange rate, making loans, and providing dollars to its subsidiaries. *Id*. at 632-33.

Unlike *El Puerto*, the record here does not show Rodrigo engaged in a pattern of numerous and repeated transactions involving the Texas bank accounts. To the contrary, the record indicates

that although the Texas bank accounts were in existence for many years, Rodrigo's use of the accounts was sporadic. Additionally, the record does not show any particular benefits Rodrigo obtained by using the bank accounts. Focusing on the quality and nature of the contacts at issue, we are of the opinion that Rodrigo's use of the bank accounts was not continuous and systematic and did not amount to substantial activity, and therefore, was insufficient to support the exercise of general jurisdiction over Rodrigo. *See Transportes Aereos*, 5 S.W.3d at 720 (holding infrequent use of Texas bank account to assist in sporadic purchases as well as other contacts were insufficient to warrant general jurisdiction); *Ramirez*, 794 S.W.2d at 504 (holding trial court's general jurisdiction was not invoked by merely locating money in a Texas bank account). We, therefore, conclude Rodrigo negated all bases for personal jurisdiction as required.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice